IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RENAE STRAIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17-00464-CV-W-ODS |
| ) | |
| SAFECO INSURANCE COMPANY ) | |
| OF ILLINOIS, ) | |
| ) | |
| Defendant. ) | |

### ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pending are cross-motions for summary judgment. Defendant's motion for summary judgment (Doc. #16) is granted, and Plaintiff's motion for summary judgment (Doc. #18) is denied.

### I. BACKGROUND

The material facts are not in dispute.[1] On January 23, 2017, Plaintiff Renae Strain was an occupant of a 2003 Honda Pilot driven by her husband, Joel Strain. Plaintiff and her husband were struck by an automobile driven by non-party Sara Boyer after Boyer's vehicle crossed the center line of an icy road. Boyer maintained insurance with Geico Insurance, but her policy provided liability limits of only $25,000 per person. Geico tendered its policy limits to Plaintiff, but Plaintiff suffered injuries in excess of $25,000.

At the time of the accident, Plaintiff's Safeco Insurance Policy Z4843096 was in force. The policy provided coverage for a 1999 Dodge Ram, a 1981 Chevrolet Corvette, and the 2003 Honda Pilot involved in the accident. The policy's declarations page for each of the three vehicles provided underinsured motor vehicle coverage with

---

[1] The facts in this Order are taken from the parties' briefs in support of and in opposition to their respective motions for summary judgment. Docs. #17, 19-21. The policy at issue was filed as an exhibit to Plaintiff's Complaint. Doc #1-1.

limits of "$100,000 Each person" for claims arising out of bodily injury to one person, and "$300,000 Each Accident" for claims arising out of bodily injury in one accident. The limit of liability section of the policy's underinsured motorists coverage states:

> **A.** The limit of liability shown in the Declarations for "each person" for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death (including loss of consortium and wrongful death), arising out of **bodily injury** sustained by any one person in any one accident.
>
> Subject to this limit for "each person", the limit of liability shown in the Declarations for "each accident" for Underinsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one accident.
>
> This is the most we will pay regardless of the number of:
>
> 1. **Insureds**;
> 2. Claims made;
> 3. Vehicles or premiums shown in the Declarations; or
> 4. Vehicles involved in the accident.
>
> If more than one vehicle is insured under this policy, or if more than one policy issued to the **insured** applies to the same accident, the limits applicable to Underinsured Motorists Coverage may not be stacked.

Doc. #1-1, at 49 (emphasis in original). The other insurance section of the policy's underinsured motorists coverage states:

> If there is other applicable underinsured motorist insurance available under one or more policies or provisions of coverage:
> 1. Any recovery for damages under all such policies or provisions of underinsured motorist coverage may be equal but not exceed the highest applicable limit for any one vehicle under any insurance providing underinsured motorist coverage on either a primary or excess basis.
> 2. Any underinsured motorist insurance we provide with respect to a vehicle you do not own shall be excess over any collectible underinsured motorist insurance providing coverage on a primary basis. However, the maximum limit of our liability shall not exceed the highest limit applicable to any one auto.
> ...

Doc. #1-1, at 50. The general provisions section of the policy states:

**TWO OR MORE AUTOS INSURED; TWO OR MORE AUTO POLICIES**

> If this policy insures two or more autos or if any other auto insurance policy issued to you by us applies to the same accident, the maximum limit of our liability shall not exceed the highest limit applicable to any one auto. In no event shall the limit of liability of two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available to you or any **insured.**

Doc. #1-1, at 47 (emphasis in original).

Following her accident, Plaintiff submitted a claim to Safeco for a total of $300,000, reaching that figure by combining the $100,000 underinsured motorists coverage limits for each of the three vehicles covered by her Safeco policy. The 1999 Dodge Ram and 1981 Chevrolet Corvette were not involved in the accident. In April 2017, Safeco tendered $100,000 to Plaintiff, but informed Plaintiff that the policy prohibited stacking of underinsured motorists coverage, which precluded Plaintiff from receiving the full amount of her claim. On summary judgment, the issue is whether Plaintiff may "stack" the policy's underinsured motorists coverage for the three vehicles covered by the policy.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588-89 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984). "[A] nonmovant

may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Nationwide Prop. & Cas. Ins. Co. v. Faircloth*, 845 F.3d 378, 382 (8th Cir. 2016) (citations omitted).

### III. DISCUSSION

Interpretation of an insurance policy is a question of law. *McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 171 (Mo. banc 1999) (citation omitted). In Missouri, the general rules of contract construction apply to insurance contracts. *Daughhetee v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 1128, 1132 (8th Cir. 2014) (citation omitted). "The provisions of an insurance policy are read in context of the policy as a whole," and "[t]he language in a policy is given its ordinary meaning unless another meaning is plainly intended." *Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 77 (Mo. banc. 1998) (citations omitted). The key is whether the language is ambiguous or unambiguous. *Daughhetee*, 743 F.3d at 1132-33 (citation omitted). If the language is unambiguous, the Court must interpret the policy as written, but if the language is ambiguous, the Court must interpret the policy in favor of the insured. *Id.* at 1133 (citations omitted). "An ambiguity exists when there is duplicity, indistinctness or uncertainty in the meaning of the policy [and] is reasonably open to different constructions." *Gulf Ins. Co. v. Noble Broad.*, 936 S.W.3d 810, 814 (Mo. banc 1997). The presence of a broad provision for coverage coupled with subsequent narrowing language does not create an ambiguity. *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 162-63 (Mo. banc 2007).

At issue is whether Plaintiff's underinsured motor vehicle coverages can be stacked. "Stacking" refers to "an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle." *Lee v. State Farm Mut. Auto.*, Case No. 10-5083-CV-SW-RED, 2011 WL 5983370, at *1 (W.D. Mo. Nov. 30, 2011) (quoting *Lynch v. Shelter Mut. Ins. Co.*, 325 S.W.3d 531, 539 (Mo. Ct. App. 2010)); *see also Niswonger v. Farm Bureau Town & Country Ins. Co.*, 992 S.W.2d 308, 313 (Mo. Ct. App. 1999) (citation omitted).

4

Underinsured motorist coverage is "intended to provide insurance coverage for insureds who have been bodily injured by a negligent motorist whose own automobile liability insurance coverage is insufficient to fully pay for the injured person's actual damages." *Long v. Shelter Ins. Cos.*, 351 S.W.3d 692, 696 (Mo. Ct. App. 2011) (internal quotation omitted). Uninsured motorist coverage is not required in Missouri. *Id.* "Consequently, the existence of the [underinsured motorist] coverage and its ability to be stacked are determined by the contract entered between the insured and insurer." *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009) (internal quotation and citation omitted). If the insurance policy language is unambiguous in disallowing stacking, the anti-stacking provision will be enforceable. *Id.* (citation omitted); *see also Kennedy v. Safeco Ins. Co. of Ill.*, 413 S.W.3d 14, 16-18 (Mo. Ct. App. 2013) (enforcing the anti-stacking provision). If the insurance policy language is ambiguous as to stacking, "it must be construed against the insurer" and "stacking will be allowed." *Ritchie*, 307 S.W.3d at 135 (internal quotation and citation omitted); *see also Niswonger*, 992 S.W.2d at 316-19.

Plaintiff argues the "other insurance" section of the Safeco policy should be read to authorize stacking because its language is similar to other cases in which stacking has been permitted. *See Ritchie*, 307 S.W.3d at 137-39; *Jordan v. Safeco Ins. Co. of Ill.*, 741 F.3d 882, 885-88 (8th Cir. 2014). Plaintiff acknowledges the other insurance provisions in Ritchie and Jordan "are not identical" to the Safeco policy at issue here, but argues the differences "do not take this case outside the scope" of those cases. Doc. #19, at 20. Plaintiff urges the Court to follow *Jordan*, but Plaintiff's characterization of the policies looks past the Eighth Circuit's directive to "exercise care in applying case holdings that have interpreted policies not identical to the policy at issue." *Jordan*, 741 F.3d at 885. While the Court's analysis of Safeco's other insurance provision proceeds in a similar fashion as in *Ritchie* and *Jordan*, the language at issue here differs from these cases.

The other insurance provision in the Safeco policy at issue goes beyond those found in *Ritchie* and *Jordan* because it includes additional language stating, "[h]owever, the maximum limit of our liability shall not exceed the highest limit applicable to any one auto." This language does not specifically prohibit stacking by reference to the limit of

5

liability section as other unambiguous policies do. *See Midwestern Indem. Co. v. Brooks*, 779 F.3d 540, 546 n.5 (8th Cir. 2015) (distinguishing *Jordan* because the parties agreed the policy's other insurance clause would make the policy ambiguous as to stacking and disagreed only about an occupancy requirement, and distinguishing *Ritchie* because the other insurance section was expressly subject to the limit of liability section). However, an ambiguity will not exist if the policy's language simply fails to prohibit stacking; rather, the policy's language must appear to authorize stacking. *Id.* at 546. The other insurance section on which Plaintiff relies indicates "the maximum limit of our liability shall not exceed the highest limit applicable to any one auto." This language does not appear to authorize stacking given its limitation to the liability amount of *any one auto*. Nor does this language conflict with the limit of liability section or the two or more autos insured statement in the policy's general provisions, which expressly prohibits stacking. Accordingly, Plaintiff may not stack the policy's underinsured motorists coverage.

Plaintiff also argues the phrase, "[h]owever, the maximum limit of our liability shall not exceed the highest limit applicable to any one auto" in the other insurance section is ambiguous. The Court disagrees. Plaintiff states she does not know whether the "maximum limit of our liability" language applies to each vehicle in the declarations, or applies regardless of the number of vehicles insured like separate language in the limit of liability section allegedly indicates. This does not create an ambiguity because, reading the sentence as a whole, it is clear the "maximum limit of [Safeco's] liability" does not exceed *any one auto* as opposed to all autos or all vehicles.

Plaintiff further argues ambiguity because the sentence does not distinguish between "per person" and "per accident" limits, and thus, causes confusion about what the "highest limit" is under the policy. Reading the contract as a whole, the Court must refer to the definition of liability limits in the limit of liability section, which also includes a clear prohibition against stacking. *See Rowlett v. Twin City Fire Ins. Co.*, No. 13-cv-06054-DW, 2014 WL 12769662, at *4 (W.D. Mo. Mar. 6, 2014). The Court finds this language does not create an ambiguity such that Plaintiff may stack her underinsured motorists coverages.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted, and Plaintiff's motion for summary judgment is denied.

IT IS SO ORDERED.

DATE: February 21, 2018

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT